TOLEDO BAR ASSOCIATION *v.* WEISBERG.

[Cite as *Toledo Bar Assn. v. Weisberg*, 124 Ohio St.3d 274, 2010-Ohio-142.]

*Attorneys at law — Misconduct — Tax evasion — Commingling — Two-year suspension with conditional stay — Credit for interim suspension denied.*

(No. 2008-0390 — Submitted October 20, 2009 — Decided January 27, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-077.

_____

**Per Curiam**.

{¶ 1} Respondent, Joseph D. Weisberg of Sylvania, Ohio, Attorney Registration No. 0001441, was admitted to the practice of law in Ohio in 1967. On March 26, 2007, we suspended respondent's license to practice for an interim period pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of a felony. See *In re Weisberg*, 113 Ohio St.3d 1424, 2007-Ohio-1313, 863 N.E.2d 642.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that as our final disposition in this case we suspend respondent's license to practice for two years. Because he has been barred from practice for over two and one-half years already, however, the board further recommends that we afford credit for the interim suspension of his license on the condition that he obtain treatment for habitual gambling. The board's recommendation is based on findings that respondent was convicted on one count of federal income tax evasion and also commingled his personal funds with funds held in trust for clients. We accept the board's findings that respondent violated ethical standards incumbent on Ohio lawyers; however, we conclude that a two-year suspension

from practice, all stayed on the condition of treatment to control his gambling, but with no credit for the interim suspension, is the appropriate sanction.

{¶ 3} Relator, the Toledo Bar Association, charged respondent in a two-count complaint with violations of two Disciplinary Rules of the Code of Professional Responsibility—DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and 9-102(A) (requiring a lawyer to maintain client funds in a separate, identifiable bank account). The board initially considered the case on a consent-to-discipline agreement, filed pursuant to BCGD Proc.Reg. 11, in which the parties stipulated to facts and misconduct and proposed as a sanction that respondent's license to practice be suspended for one year and that he be given credit for the interim suspension. The board accepted the agreement and recommended that we impose the agreed-upon sanction.

{¶ 4} Upon review of the board's certified report, we rejected the recommendation and returned the cause for further proceedings. See *Toledo Bar Assn. v. Weisberg*, 118 Ohio St.3d 1499, 2008-Ohio-3305, 889 N.E.2d 572. A panel of three board members heard the case and, based on the parties' stipulations and respondent's testimony, made findings of fact and conclusions of law. As a sanction, the panel recommended the two-year suspension of respondent's license, with credit for his March 26, 2007 interim suspension from practice. The board accepted the panel's findings of misconduct and recommendation.

{¶ 5} The parties do not object to the board's report.

**Misconduct**

{¶ 6} Respondent pleaded guilty in August 2006 to one count of federal income tax evasion in violation of Section 7201, Title 26, U.S. Code, the felony that led to his interim suspension. The United States District Court, Northern District of Ohio, sentenced respondent in February 2007 to five months in prison,

five months of electronically monitored house arrest, and three years of supervised postrelease control. Respondent has served his entire sentence.

{¶ 7} Respondent's conviction resulted from his failure to pay his taxes and from his concealment of the funds, not from any failure to report income. In admitting that he violated DR 1-102(A)(3), respondent stipulated:

{¶ 8} "5. At some point prior to 1996, Respondent became delinquent in the payment of Federal income taxes for the calendar years 1988, 1989, 1990, 1991, and 1992. He filed returns and paid the taxes due for 1988, 1993, 1994, 1995, 1996, 2000, and 2002.

{¶ 9} "6. In 1996, Respondent entered into an installment payment agreement with the Internal Revenue Service (IRS) to pay the delinquent taxes referred to above in installments. In 1998, however, he failed to pay a portion of his income taxes due for 1997. Under the terms of the installment agreement, that failure constituted a default. The IRS terminated the installment agreement, but never informed respondent until the end of 1999. During 1998 and 1999, Respondent made payments under the agreement."

{¶ 10} Respondent also admitted having violated DR 9-102(A). As to the events underlying this misconduct, respondent stipulated:

{¶ 11} "11. At all times material to this case, Respondent maintained an IOLTA [Interest on Lawyers Trust Accounts] account as required by statute and court rule.

{¶ 12} "12. From 1997 through 2002, Respondent deposited and kept some personal funds in his IOLTA account, including substantial portions of legal fees he earned during that period, in an attempt to conceal his assets from the IRS.

{¶ 13} "13. From 1997 through 2002, Respondent used his IOLTA for virtually all of his business and personal funds. On many occasions, he drew checks on said account to pay numerous and substantial personal expenses."

**{¶ 14}** The board accepted respondent's admissions of misconduct, as do we.

### Sanction

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 16}** We have deemed attempts to willfully evade federal income taxes to be illegal conduct involving moral turpitude in violation of DR 1-102(A)(3). *Disciplinary Counsel v. Roetzel* (1994), 70 Ohio St.3d 376, 639 N.E.2d 50. The lawyer in *Roetzel* failed to answer or defend against a complaint charging this misconduct, and we indefinitely suspended his license to practice, providing no credit for the nearly one year that his license had been under an interim suspension because of his felony conviction. Respondent's attempt to conceal his personal assets from creditors by depositing them into his client trust account is also a serious breach of ethical duties:

**{¶ 17}** "Clearly, a lawyer may not use his trust account, which is a tool established for the benefit of the profession, as a 'safe haven' for his money to avoid his personal financial responsibilities. * * * [I]t is 'of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts and that the violation of that rule warrants a substantial sanction whether or not the client has been harmed.' " *Disciplinary Counsel v. Vogtsberger*, 119 Ohio St.3d 458, 2008-Ohio-4571, 895 N.E.2d 158, ¶

4

10, quoting *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 577, 669 N.E.2d 831.

{¶ 18} After weighing the aggravating and mitigating circumstances of his case, however, we share the board's obvious confidence in the rehabilitative measures respondent has undertaken since his criminal conviction. As the board noted, respondent's illegal conduct, which he attributed to "a cash flow situation" produced mainly by gambling debts, was motivated by dishonesty and self-interest, an aggravating factor under BCGD Proc.Reg. 10(B)(1)(b). But respondent established the mitigating factors that he has had no prior incidents of misconduct in his career of over 40 years, he cooperated completely in the disciplinary process, and he produced solid evidence of his good character and reputation apart from the underlying events. See BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). Moreover, respondent has served the sentence for his crimes, a mitigating factor under BCGD Proc.Reg. 10(B)(2)(f), and has agreed to continue treatment to manage his admittedly compulsive gambling.

{¶ 19} A two-year suspension of respondent's license is commensurate with sanctions imposed in similar cases. In addition, a sanction that includes a suspension period, stayed on conditions of a monitored probation, will provide necessary oversight in respondent's practice and ensure that he remains committed to treatment and refrains from further excesses. We therefore suspend respondent from practice for two years, with no credit for the interim suspension; however, the suspension is stayed on the condition that respondent serve a two-year monitored probation in accordance with Gov.Bar R. V(9), including that he enter an Ohio Lawyers Assistance Program contract to obtain counseling and any other appropriate therapy for his gambling. If respondent fails to comply with the terms of the stay or probation, the stay will be lifted, and respondent will serve the entire two-year suspension from practice.

{¶ 20} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan B. Cherry, Bar Counsel, and George E. Gerken, for relator.

Wittenberg, Phillips, Levy & Nusbaum and Jerome Phillips, for respondent.

_____