[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 30.]

CINCINNATI BAR ASSOCIATION *v.* RINDERKNECHT.

[Cite as *Cincinnati Bar Assn. v. Rinderknecht*, 1997-Ohio-309.]

*Attorneys at law—Misconduct—Indefinite suspension—Soliciting business by telephone—Entering into agreement with and making payment to a non-approved organization to promote services as an attorney—Giving unsolicited advice that persons should obtain legal counsel and then accepting employment from those persons—Accepting employment that attorney's agent has recommended.*

(No. 96-1993—Submitted March 4, 1997—Decided June 18, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-13.

———————————

{¶ 1} In a complaint filed on February 6, 1995, and amended on October 10, 1995, the Cincinnati Bar Association, relator, charged respondent, Edward G. Rinderknecht of Cincinnati, Ohio, Attorney Registration No. 0025845, with violations of the Disciplinary Rules. In his answers, respondent denied violating any Disciplinary Rules and asked that the complaints be dismissed.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard evidence in this case on January 31 and February 1, 1996. At this hearing, relator attempted to prove that respondent had conceived of a program, in conjunction with a business consultant and a doctor, in which recent accident victims would receive calls from employees of the program. The caller would attempt to secure the medical and legal business of the accident victim for the doctor and respondent. Relator also attempted to prove that respondent hired people to monitor police radio scanners and appear at accident

scenes to secure the business of the accident victims for the doctor and respondent. Respondent attempted to prove that he did not participate in any such program.

{¶ 3} Nevertheless, the panel found that respondent hired Frank Lalli, a long-time business associate, to help respondent organize his office. Respondent introduced Lalli to Dr. Robert Barner, a chiropractor. Barner hired Lalli to market Barner's chiropractic practice.

{¶ 4} To do this, Lalli created the Ohio Accident Assistance Program ("OAAP"). OAAP hired telephone solicitors to call accident victims to inform the victims about their rights, including receiving medical care and legal representation. In reality, OAAP attempted to steer business to Barner and respondent. Respondent paid OAAP $1,075 per month for this service.

{¶ 5} Respondent and Barner also paid Robert "L.A." Jackson to drive individuals to and from their offices for appointments. According to the testimony, Jackson monitored a police scanner for accidents. On learning of an accident, he appeared at the scene, sometimes before the police arrived, and offered to transport the victim to see Barner and respondent. Jackson received between $100 and $200 for each referral.

{¶ 6} Under Count I, Dale Daniels received a telephone call at his house from OAAP following his automobile collision. OAAP set Daniels up with appointments to see Barner and respondent. The caller also set up similar appointments for Dante Seta, an acquaintance of Daniels, who was also injured in the collision.

{¶ 7} The panel found that respondent had violated DR 2-101(F)(1) (soliciting business by telephone), 2-103(B) and (C) (entering into agreement with and making payment to a non-approved organization to promote services as an attorney), and 2-104(A) (giving unsolicited advice that persons should obtain legal counsel and then accepting employment from those persons).

**{¶ 8}** As to Count II, Andrea Jones and Devon Flowers received telephone calls after an automobile collision from a person named "Roxanne," who stated that she worked for an agency that could help them. On Roxanne's recommendation, Jones scheduled appointments with respondent. According to the testimony, a Roxanne Jacobs worked for Barner and respondent at the time the telephone calls were made.

**{¶ 9}** The panel found that respondent had violated the same Disciplinary Rules as in Count I.

**{¶ 10}** Finally, as to Count III, Frank C. Walker was in an automobile accident. Jackson appeared at the scene immediately and approached Walker. Jackson gave Walker respondent's business card, on the back of which was Jackson's pager number, and recommended that Walker should retain respondent. Relator claims that Jackson received $100 for Walker's referral.

**{¶ 11}** The panel found that respondent had violated DR 2-101(F)(1), 2-103(A) and (B) (accepting employment that an attorney's agent has recommended), and 2-104(A).

**{¶ 12}** The panel recommended that the court indefinitely suspend respondent from the practice of law in Ohio. The board adopted the findings of fact, conclusions of law, and recommendation of the panel. Respondent objects to these findings and urges the court to dismiss the case or, alternatively, to issue a much less severe sanction. Relator objects to the findings and asks the court to permanently disbar respondent.

—————————————

*John B. Pinney* and *James L. O'Connell*, for relator.

*H. Fred Hoefle*, for respondent.

—————————————

***Per Curiam.***

**{¶ 13}** We reject respondent's arguments that the panel incorrectly admitted the statement of a co-conspirator and that relator did not prove the violations by clear and convincing evidence. Furthermore, we accept the findings, conclusions, and recommended sanction of the board. Accordingly, we indefinitely suspend respondent from the practice of law in Ohio and tax costs to him.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____